24-3140-cv
*Loans on Fine Art LLC, et al. v. Ian S. Peck et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of November, two thousand twenty-five.

PRESENT: John M. Walker, Jr.,
Susan L. Carney,
William J. Nardini,
*Circuit Judges*.

-----------------------------------------------------------------------

LOANS ON FINE ART LLC,

*Petitioner-Appellee*,

ART FUND III LLC, COLORADO ART HOLDINGS LLC, GB FUND LLC, LOTUS INVESTMENT CORP.,

*Consolidated-Petitioners-Appellees*,

v.                                                        No. 24-3140-cv

IAN S. PECK, ACG ARRANGEMENT SERVICES LLC, ACG CAPITAL COMPANY, LLC, MODERN ART SERVICES, LLC, PEGASUS CREDIT COMPANY LLC,

*Respondents-Appellants,*

PATRIOT CREDIT COMPANY LLC,

*Respondent.*

--------------------------------------------------------------------

APPEARING FOR APPELLANTS:   MATTHEW J. PRESS, Press Koral LLP, New York, New York.

APPEARING FOR APPELLEE:   NATHAN A. HOLCOLMB, Holcolmb, P.C., New York, New York (M. Zachary Bluestone, *on the brief*, Bluestone, P.C., New York, New York).

Appeal from a judgment of the United States District Court for the Southern District of New York (Jennifer H. Rearden, *Judge*), confirming an arbitral award.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

In this appeal, Respondents-Appellants (the "Peck Parties")[1] appeal from the district court's judgment confirming an arbitral award (the "Award").

On January 20, 2021, the Peck Parties and Petitioners-Appellees (the "Greenberg Parties")[2] entered into a Settlement Agreement to resolve

---

[1] The "Peck Parties" are: Ian S. Peck; ACG Arrangement Services LLC; ACG Capital Company, LLC; Modern Art Services, LLC; Pegasus Credit Company LLC; and Patriot Credit Company LLC.

[2] The "Greenberg Parties" are: Loans on Fine Art LLC; Art Fund III LLC; Colorado Art Holdings LLC; GB Fund LLC; and Lotus Investment Corp. The Settlement Agreement also includes Gary Greenberg individually as a party, but he is not a party to this suit.

2

disagreements related to their financing businesses involving works of fine art. In lieu of cash, the Peck Parties agreed to pay the Greenberg Parties proceeds from the sale of an oil painting, the *Ottaviano de' Medici*, attributed to Italian Renaissance Master Andrea del Sarto (the "Work"). The Peck Parties failed to produce the Work for evaluation by February 12, 2021, as required by § 1(a) of the Settlement Agreement. In light of that undisputed breach, on April 29, 2021, the Greenberg Parties initiated arbitration under the Settlement Agreement, seeking damages. The Arbitrator found in favor of the Greenberg Parties and awarded them damages in the amount of $7,198,960.30. On appeal, the Peck Parties challenge the district court's confirmation of the Award.

They urge vacatur of the Award on several different grounds. First, they argue that the Award is invalid under § 10(a)(1) of the Federal Arbitration Act ("FAA") for fraud. 9 U.S.C. § 10(a)(1). They assert that the Award was procured by fraud because Dr. Timothy Hunter, who prepared an appraisal of the Work in 2021 (the "2021 Appraisal") as an expert witness for the Greenberg Parties in the arbitration, "intentional[ly] and fraudulent[ly]" failed to disclose his involvement in another appraisal, prepared in 2019 (the "2019 Appraisal"), which valued the Work at a much lower amount. Appellants' Br. at 49. This alleged fraud, they say,

3

bore on "[t]he credibility of Dr. Hunter as a witness." *Id.* at 50. Next, they contend that the Arbitrator engaged in misconduct, warranting vacatur under § 10(a)(3) of the FAA, by refusing to permit them to submit evidence "rebutting Dr. Hunter's claim that he simply forgot his recent prior [appraisal] of the same painting." *Id.* at 49-50 (citing 9 U.S.C. § 10(a)(3)). Finally, they argue that the Arbitrator "manifestly disregarded the law," so as to require vacatur, by failing to apply black-letter law when calculating damages and by ignoring certain terms of the Settlement Agreement. *Id.* at 7.

This Court may vacate an arbitral award only if a petitioner shows "that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). Section 10(a) of the FAA "permits vacatur of an arbitral award in only four specifically enumerated situations, all of which involve corruption, fraud, or some other impropriety on the part of the arbitrators." *Id.*; *see* 9 U.S.C. § 10(a). In addition, "as judicial gloss on the[se] specific grounds for vacatur of arbitration awards," we may "set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted). Reviewing the Award under

4

these standards, we conclude that the Peck Parties have not shown any ground for vacatur.

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

**I.      Alleged Violations of the FAA**

As stated above, judicial vacatur of an arbitral award is permitted where, as relevant here, "the award was procured by . . . fraud," or "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. §§ 10(a)(1) and 10(a)(3).

To obtain vacatur under § 10(a)(1) for fraud, a petitioner must show, in part, that "even with the exercise of due diligence, [the] petitioner could not have discovered the fraud prior to the award issuing," *Odeon Cap. Grp. LLC v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017), so that he could not have brought the fraud to the arbitrator's attention, *see Karppinen v. Karl Keifer Mach. Co.*, 187 F.2d 32, 35 (2d Cir. 1951) (explaining that, where a fraud allegation "raises issues of credibility . . . the party relying on it must show that he could not have discovered it during the arbitration, else he should have invoked it as a defense at that time").  Here, the

Peck Parties not only could have but in fact did discover the fraud they allege before the Award issued. They concede that they "learned of the 2019 Appraisal" before the Arbitrator had even conducted an evidentiary hearing on the Greenberg Parties' claims. Appellants' Br. at 21. Moreover, they cross-examined Dr. Hunter extensively at the hearing regarding the 2019 Appraisal and introduced that appraisal report into evidence as an exhibit. In essence, then, their allegation of fraud is merely an invitation for us to second-guess the Arbitrator's determination that Dr. Hunter was a credible witness. We decline to do so. *See Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 F. App'x 40, 43 (2d Cir. 2006) (summary order) ("[I]t is the arbitrator's role to make factual findings, weigh evidence, and assess the credibility of witnesses, and it is well-settled that '[a] federal court may not conduct a reassessment of the evidentiary record.'") (quoting *Wallace v. Buttar*, 378 F.3d 182, 193 (2d Cir. 2004)). We therefore reject the Peck Parties' claim that the Award was procured by fraud.

We also reject the Peck Parties' argument that the Arbitrator engaged in misconduct warranting vacatur by declining to grant their request to submit additional evidence pertaining to their fraud allegations. The Arbitrator was not required to "hear all the evidence proffered by a party," especially when such

6

evidence would be cumulative of testimony already placed in the record through cross-examination. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 107 (2d Cir. 2013).

**II.    Manifest Disregard of the Law**

The Peck Parties next contend that the Settlement Agreement's merger clause barred Dr. Hunter, in performing the 2021 Appraisal, from relying on any of their precontractual statements regarding the Work's condition, which were not contained in the Settlement Agreement.[3]  But, first, the Settlement Agreement's terms and the representations it contained bound only its parties—*i.e.*, the Greenberg and Peck Parties.  The merger clause did not bind Dr. Hunter or restrict the information he could use in preparing the 2021 Appraisal.  Second, to the extent the Arbitrator referred to any representation as to the condition of the Work as a part of the Settlement Agreement, such a statement was mistaken.  This Court, however, "will not vacate an award because of a simple error in law or a failure by the arbitrators to understand or apply it but only when a party clearly demonstrates that the [arbitrators] intentionally defied the law."

---

[3] The Settlement Agreement's merger clause provides: "This Agreement constitutes the entire agreement and understanding of the Parties with respect to the subject matter hereof and thereof and supersedes all prior agreements and understandings, both written and oral, of the Parties regarding the subject matter hereof and thereof."  App'x at 57.

7

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (internal quotation marks omitted). The Peck Parties have not established that the Arbitrator "intentionally defied the law" in permitting Dr. Hunter to rely in part on their precontractual representations. *Id*.

Nor, contrary to their contention, have the Peck Parties shown that the Arbitrator manifestly disregarded the law in relying on the 2021 Appraisal when assessing damages. Despite the significant difference in valuations between the 2019 Appraisal and the 2021 Appraisal, the Arbitrator reasonably relied on the latter. He determined that the 2019 Appraisal was not relevant because (1) it had been conservatively calculated to establish the Work's value for loan collateral purposes; (2) valuation must be determined as of the date of breach, which was 2021; and (3) the assumptions that supported the 2019 Appraisal were different from those on which Dr. Hunter appropriately relied in 2021. As the Arbitrator correctly noted, "Doubts are generally resolved against the party in breach. Therefore, a plaintiff need only show a stable foundation for a reasonable estimate of the damage[s] incurred as [a] result of the breach. At that point the burden of uncertainty as to the amount is on the breaching party." App'x at 81 (citing *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016)). Far from

8

manifestly disregarding the law, the Arbitrator properly resolved any doubts as to the Work's value at the time of breach in favor of the Greenberg Parties, by relying on the 2021 Appraisal.

Finally, the Peck Parties have not shown that the Arbitrator manifestly disregarded the law when, in calculating damages, he refused to implement a 10% deduction for "sales expenses" under § 1(c) of the Settlement Agreement's "waterfall provision." It was not necessary for the Arbitrator to explain the basis for excluding this deduction because the reason was obvious: no sale occurred, and so no such expenses were incurred. *See STMicroelectronics, N.V.*, 648 F.3d at 78 (stating that even when arbitrators "do not explain the reason for their decision," this Court will uphold the decision if it "can discern any valid ground for it"); *Duferco Int'l Steel Trading*, 333 F.3d at 390 ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.").

* * *

We have considered all of the remaining arguments made by the Peck Parties and find them to be without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court